**NOT FOR PUBLICATION**

| | |
|---|---|
| IN RE: FOSAMAX (ALENDRONATE SODIUM) PRODUCTS LIABILITY LITIGATION (NO. II) | MDL No. 2243 (JAP-LHG) |
| RELATES TO | |
| PATRICK WELSH, et al, | Civil Action No. 11-3045 |
| Plaintiffs. | **MEMORANDUM OPINION** |
| v. | |
| MERCK SHARPE & DOHME CORP., et al. | RECEIVED |
| Defendants. | APR - 3 2012 AT 8:30____M WILLIAM T. WALSH CLERK |

**PISANO, Judge**

  Presently before the Court is a motion filed by Patrick Welsh, et al. ("Plaintiffs") to remand this action to the Circuit Court for the City of St. Louis, Missouri. Defendants Merck Sharpe & Dohme Corp., Apotex Corporation, Teva Pharmaceuticals USA, Inc., Barr Pharmaceuticals LLC, Barr Laboratories, Inc., Mylan, Inc., Mylan Pharmaceuticals, Inc., Sun Pharmaceutical Industries, Inc., Cobalt Laboratories, Inc., Watson Pharmaceuticals Inc., and Watson Laboratories, Inc. (collectively "Defendants") oppose the motion. The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant in part and deny in part the motion for remand.

I.  BACKGROUND

Plaintiffs filed this action on February 28, 2011 in the Circuit Court for the City of St. Louis, Missouri. (*See* Complaint; DE 7.)[1] Altogether, the action consists of 91 plaintiffs who are citizens of 28 different states. (*Id.*) Plaintiffs assert various state law claims, all emanating from a general theory of failure to warn, but Plaintiffs also bring claims based upon various state law products liability theories, including, *inter alia*, defective design, negligence, fraud, misrepresentation, breach of express and implied warranties, and loss of consortium.

The claims allege that the Defendants concealed risks associated with, improperly promoted, and grossly exaggerated the benefits of Fosamax and its generic equivalent (alendronate sodium), which caused Plaintiffs to suffer "long bone" fractures. (*See id.* ¶¶ 1, 25-90; DE 7.) Plaintiffs do not identify with specificity which long bone(s) each individual injured. Rather Plaintiffs state that they "have suffered and may continue to suffer severe and permanent personal injuries, including weakened or brittle bones, multiple stress fractures, and low energy femoral fractures . . . ." (*Id.* ¶ 93.)

On March 22, 2011, Defendant Merck Sharpe & Dohme Corp. ("Merck") removed the case from the Missouri state court to the United States District Court for the Eastern District of Missouri on the ground that the court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. On March 25, 2011, Plaintiffs filed a motion to remand in the Eastern District of Missouri, but before that court could decide the motion, the Judicial Panel on Multidistrict Litigation centralized all actions for coordinated and consolidated pretrial proceedings in the District of New Jersey. (DE 81.) Plaintiffs filed a second motion for remand in this MDL proceeding on

---

[1] Unless specifically noted, all citations to docket entries refer to the docket for Civil Action No. 11-3045.

June 3, 2011. (DE 98.) Defendants oppose the motion. (Civil Action No. 08-08, DE 576, 564, 578.)

## II.     DISCUSSION

### A.     Fraudulent Misjoinder

Pursuant to the federal removal statute, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant or defendants, to the district court." 28 U.S.C. § 1441(a). In this case, no federal question is alleged, and therefore, jurisdiction turns on the diversity of citizenship provisions of 28 U.S.C. § 1332. Federal district courts have subject matter jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. *Id.* § 1332 (a)(1). "For a removal predicated upon diversity of citizenship, a proper exercise of federal jurisdiction requires satisfaction of the amount in controversy requirement as well as complete diversity between the parties, that is, every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006).

The "party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). "When dealing with cases that have been consolidated for pretrial proceedings pursuant to an order of the MDL Panel . . . the law of the transferor forum merits close attention[,]" but the transferee court is bound by the law of the circuit in which it sits. *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. 429, 439 (D.N.J. 2000). Should a court find that it does not have subject matter jurisdiction over a removed action, the court must remand the action to the state court where it was originally filed. 28 U.S.C. § 1447(c).

3

Here, complete diversity of citizenship is lacking on the face of the complaint. Defendants assert, however, that Plaintiffs' claims were fraudulently misjoined and that the Court therefore should ignore the citizenship of misjoined parties for purposes of exercising diversity jurisdiction.

The doctrine relied upon by Defendants, fraudulent misjoinder, is different than fraudulent joinder. Fraudulent joinder is an exception to the complete diversity requirement, whereby a diverse defendant "may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Briscoe*, 448 F.3d at 215-16. Fraudulent joinder exists if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id.* at 216 (*quoting Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)).

Fraudulent misjoinder recognizes another basis for removal jurisdiction. Whereas fraudulent joinder focuses on the substantive deficiencies of a claim against a joined party, fraudulent misjoinder focuses on procedural deficiencies of a party's joinder. *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010).

The doctrine of fraudulent misjoinder was first announced by the Eleventh Circuit in *Tapscott v. MS Dealer Services Corp.*, 77 F.3d 1535 (11th Cir. 1996). In *Tapscott*, the plaintiffs brought a putative class action in Alabama state court against diverse and non-diverse defendants alleging violations of state law arising from the sale of automobile service contracts. *Tapscott*, 77 F.3d at 1355. The plaintiffs later amended their complaint to add claims against diverse and non-diverse defendants who sold retail product service contracts. *Id.* The plaintiffs then dismissed the non-diverse retail product defendants, leaving one, diverse retail product defendant

4

along with the diverse and non-diverse automobile defendants. *Id.* at 1355 n. 1. The remaining diverse retail product defendant removed the case to federal court, asserting diversity jurisdiction. *Id.* at 1355. The plaintiffs moved to remand the case, but the district court denied the motion. *Id.* 1355-56.

The Eleventh Circuit affirmed the denial finding that the claims against the automobile defendants and the retail product defendants had been fraudulently misjoined. The court found that the two classes of defendants were improperly joined under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 20(a) because the classes of defendants were "wholly distinct," with the only commonality being allegations of violations of the Alabama Code. *Id.* at 1360. The court held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's right of removal cannot be defeated by fraudulent joinder of a resident defendant having no real connection with the controversy." *Id.* (internal citation omitted). The court therefore concluded that the plaintiffs' "attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.*

Accordingly, the fraudulent misjoinder analysis requires two steps. First, a court must find that claims have been misjoined. There is disagreement among courts as to whether federal or state permissive joinder rules govern. The *Tapscott* court applied Fed. R. Civ. P. 20(a) to determine whether the claims were misjoined. *Id.* Other courts, however, have evaluated fraudulent misjoinder using state procedural rules. *See, e.g., In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651 n. 141 (S.D. Tex. 2005); *Osborn v. Metropolitan Life Ins. Co.* 341 F. Supp. 2d 1123, 1128-29 (E.D. Cal. 2004); *Burns v. W.S. Life Ins. Co.*, 298 F. Supp. 2d 401, 402-03 (S.D. W.Va 2004). For purposes of deciding the instant motion, this disagreement is not an issue

because Missouri's permissive joinder rule[2] is substantively identical to Fed. R. Civ. P. 20(a).[3] *See Bowling v. Kerry, Inc.*, 406 F. Supp. 2d 1057, 1061 (E.D. Mo. 2005) (citing *State ex rel. Allen v. Barker*, 581 S.W. 2d 818, 826 (Mo. 1979)).

Second, if claims have been improperly joined, the court must determine whether the joinder was egregious. *Tapscott*, 77 F.3d at 1360. Courts have gauged this requirement in a number of ways. *See Walton v. Tower Loan*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) (requiring a "level of misjoinder that was not only improper, but grossly improper."); *Rudder v. K Mart Corp.*, No. 97-0372-BH-S, 1997 U.S. Dist. LEXIS 18008, at * (S.D. Ala. Oct. 15, 1997) (finding that joinder was "collusive" and would fail to serve any legitimate purpose of fairness or judicial economy); *Asher v. Minn. Mining and Mfg. Co.*, No. 04CV522KKC, 2005 WL 1593941, at * 7 (E.D. Ky. June 30, 2005)(applying the same "reasonable basis" standard for fraudulent misjoinder as is applied in fraudulent joinder).

While fraudulent misjoinder has not been universally accepted,[4] the doctrine is particularly relevant to large pharmaceutical product liability actions. For example, in *In re Diet Drugs Products Liability Litigation*, the court held certain plaintiffs' drug product liability claims had been fraudulently misjoined. *In re Diet Drugs*, No. 98-20478, 1999 WL 55484, at *3 (E.D. Pa. July, 16 1999). The court found that plaintiffs' pleading went "well beyond mere misjoinder" because the plaintiffs "attempt[ed] to join persons from seven different states into

---

[2] Missouri Rule of Civil Procedure 52.05 provides, in relevant part: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action."
[3] Federal Rule of Civil Procedure 20(a)(1) provides: "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."
[4] The Third Circuit has not addressed fraudulent misjoinder.

6

one civil action who have absolutely no connection to each other except that they each ingested" the defendants' drugs. *Id.* The court pointed out that only two of the joined plaintiffs resided in the forum state and that the non-resident plaintiffs did not claim any contact with the forum state. *Id.* As a consequence, the court found that the joinder of the plaintiffs' claims wrongfully deprived the defendants of their right to removal. *Id.*

**B.   Application**

In reviewing the pleading filed by Plaintiffs in this case, the Court concludes that Plaintiffs' claims are fraudulently misjoined. First, the Court finds that Plaintiffs' claims have been misjoined. In order for Plaintiffs to join their claims into a single action, the claims must (1) arise out of "the same transaction, occurrence, or series of transactions or occurrences;" and (2) contain "any question of law or fact common to all" plaintiffs. Fed. R. Civ. P. 20(a); Mo. R. of Civ. P. 52.05.

Plaintiffs argue that the joinder was proper because the "suit [is] against the manufacturers and sellers of the same drug" and that "[a]ll the Plaintiffs suffered bone fractures." (Pls.' Br. at 7; DE 99.) But each of Plaintiffs' claims inherently differs in such substantial ways as to frustrate the very purpose of permissive joinder. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir.1974) (noting the purpose of Fed. R. Civ. P. 20(a) is to "promote trial convenience and expedite the final determination of disputes.").

Each Plaintiff broadly alleges "a long bone fracture."[5] However, no Plaintiff actually identifies which long bone was fractured, the type of fracture sustained, or how the fracture

---

[5] According to the U.S. National Library of Medicine, "[l]ong bones are hard, dense bones that provide strength, structure, and mobility. The femur (thigh bone) is a long bone. A long bone has a shaft and two ends. There are long bones in the fingers that are classified as 'long bones,' even though they are short in length." David C. Dugdale, *Long Bones*, MedlinePlus Medical Encyclopedia (Feb. 28, 2012), http://www.nlm.nih.gov/medlineplus/ency/article/002249.htm.

occurred. Additionally, Plaintiffs allege they purchased Fosamax "and/or" alendronate sodium from a wide variety of manufacturers. Indeed, a number of Plaintiffs name as parties "Merck and/or . . . Generic Defendants," without affirmatively identifying the specific manufacuter(s) against whom they bring actions. (*See, e.g.*, Compl. at ¶¶ 32, 37, 40, 48, 61, 70, 83, 90.) Moreover, no Plaintiff identifies the purpose for which he/she took Fosamax and/or alendronate sodium, what dose or doses were administered, or how long he/she took Fosamax and/or alendronate sodium.

These factual variances allude to a larger problem with the joinder of so many drug product liability claims. "[T]oxic tort cases raise more complicated issues of causation and exposure." *In re Rezulin Prods. Liability Litig.*, 168 F. Supp. 2d 136, 146 (S.D.N.Y. 2001). The court in *In re Rezulin* explained why joinder of plaintiffs in a drug product liability case in no way promotes judicial efficiency or convenience:

> The plaintiffs . . . allege a defect (or defects) the precise contours of which are unknown and which may have caused different results—not merely different injuries—in patients depending on such variables as exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff. They do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time . . . [T]hey do not allege injuries specific to each of them so as to allow the Court to determine how many plaintiffs, if any, share injuries in common.

*Id.* The same situation presents itself here, where 91 Plaintiffs allege such unspecific injuries as to make it impossible to determine how the Plaintiffs share any connection. Furthermore, given the complicated causation questions that pervade drug product liability claims, Plaintiffs' claims will require divergent questions of law and fact. Accordingly, the Court finds that Plaintiffs' claims are misjoined.

Second, the Court finds that the misjoinder in this case was egregious. The action involves an attempt to join 91 plaintiffs from 28 different states. (*See* Compl. ¶¶ 25-90.) Yet only three Plaintiffs are citizens of Missouri where the complaint was filed, and none of the non-resident Plaintiffs claims any connection with Missouri. (Compl. ¶¶ 25, 73.); *see also In re Diet Drugs*, 1999 WL 55484, at *3 (finding misjoinder was fraudulent where only two of nine plaintiffs were citizens of the state where the suit was originally filed).

Additionally, seventy-three (73) Plaintiffs are completely diverse from the Defendants against whom they make allegations. (*See* Compl. ¶¶ 25-29, 31, 33-41, 43-44, 46-47, 49-53, 55, 57-63, 65-74, 76-79, 81-84, 86-90.) The remaining eighteen (18) Plaintiffs name at least one non-diverse Defendant. Yet the Court is unable to conclusively determine from a reading of the complaint whether or not all of these Plaintiffs are truly non-diverse from the Defendants they name. These Plaintiffs state that they or their spouses took drugs "manufactured and sold by Merck *and/or*" one or more generic manufacturers. (*See* Compl. ¶¶ 30, 32, 42, 45, 48, 54, 56, 64, 75, 80, 85 (emphasis added).) Plaintiffs' obfuscation in naming Defendants suggests an element of collusion intended to deprive Defendants of removal jurisdiction in federal court. *See Coleman*, 238 F. Supp. 2d at 819 (S.D. Miss. 2002).

Moreover, the factual, temporal, and geographic diversity among Plaintiffs' claims wholly disregards the purposes of permissive joinder because these are claims that no "reasonable person would normally expect to be tried together." *Rudder*, 1997 U.S. Dist. LEXIS 18008, at *16. Joinder here does not "promote trial convenience," and it does not "expedite the final determination of disputes." *Mosley*, 497 F.2d at 1332.

Plaintiffs heavily rely on the Eighth Circuit's decision in *In re Prempo Products Liability Litigation*, 591 F.3d 613 (8th Cir. 2010). In that case, while refusing to either expressly adopt or

9

reject the doctrine of fraudulent misjoinder, the court found that the plaintiffs' claims had not been fraudulently misjoined. *In re Prempo.*, 591 F.3d at 622. The plaintiffs in the case alleged that the defendants' hormone replacement therapy medications caused breast cancer. *Id.* at 617. The court held that while "[i]t may be that plaintiffs' claims are not properly joined . . . it is not clear that the joinder is so egregious and grossly improper." *Id.* at 623-24. Importantly, the defendants "presented no evidence that the plaintiffs joined their claims to avoid diversity jurisdiction." *Id.* at 623.

Here, in contrast to *In re Prempo*, there is evidence that Plaintiffs structured their complaint in order to defeat diversity jurisdiction. Plaintiffs state allegations that are exceptionally vague, making it difficult for the Court to establish how the Plaintiffs share a connection, if any. Moreover, Plaintiffs are intentionally imprecise in naming defendants, which makes it impossible to determine whether some Plaintiffs truly are non-diverse from Defendants. Instead of permissive joinder functioning to promote judicial economy, Plaintiffs' joinder here "interferes with the court's ability to administer this case for pretrial purposes." *In re Diet Drugs*, 1999 WL 554584, at * 5. Accordingly, the Court concludes that joinder was undertaken to thwart Defendants' statutory right of removal to federal court, and therefore, Plaintiffs' claims are fraudulently misjoined.

Having determined that Plaintiffs' claims are fraudulently misjoined, the Court may disregard, for purposes of jurisdiction, the citizenship of fraudulently joined parties. *In re Briscoe*, 448 F.3d at 216; *Tapscott*, 77 F.3d at 1355. Upon properly exercising jurisdiction and pursuant to Fed. R. Civ. P. 21, the Court will sever all Plaintiffs. The Court will drop the diverse Plaintiffs from the action, and the non-diverse Plaintiffs' claims will be remanded to the Circuit Court for the City of St. Louis, Missouri.

### C. Generic Defendants

Finally, the Court will dismiss generic alendronate sodium manufacturers Apotex Corporation, Teva Pharmaceuticals USA, Inc., Barr Pharmaceuticals LLC, Barr Laboratories, Inc., Mylan, Inc., Mylan Pharmaceuticals, Inc., Sun Pharmaceutical Industries, Inc., Cobalt Laboratories, Inc., Watson Pharmaceuticals Inc., and Watson Laboratories, Inc ("Generic Defendants"). Pursuant to this Court's November 21, 2011 Order (DE 345), December 8, 2011 Order (DE 377), and January 17, 2012 Order (DE 470), Generic Defendants named in cases filed on or before November 21, 2011 were dismissed pursuant to the Supreme Court's decision in *PLIVA v. Mensing*, 131 S. Ct. 2567 (2011). To the extent these Orders did not address Generic Defendants named in cases with pending motions for remand, the Court now dismisses diverse Plaintiffs' claims against Generic Defendants as preempted.

## III. CONCLUSION

For the reasons above, the Court grants in part and denies in part Plaintiffs' motion for remand. The Court severs all Plaintiffs, and remands the non-diverse Plaintiffs to the Circuit Court for the City of St. Louis, Missouri. Diverse Plaintiffs shall be dropped and, in a proper venue, refile new complaints containing the same claims as plead in the original complaint. Finally, the Court dismisses claims by diverse Plaintiffs against Generic Defendants in light of the Supreme Court's decision in *PLIVA v. Mensing*, 131 S. Ct. 2567 (2011). An appropriate order is filed herewith.

Dated: April 2, 2012

_____
United States District Judge